NOT FOR PUBLICATION

**FILED**
JAMES J. WALDRON, CLERK

**APRIL 27, 2012**

U.S. BANKRUPTCY COURT
NEWARK, N.J.

BY:  s/ Ronnie Plasner, DEPUTY

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

In Re:

**NILA CASTRO,**

               Debtor.

Case No.:   11-12715 (DHS)

Judge: Donald H. Steckroth, U.S.B.J.

**OPINION**

**APPEARANCES:**

Law Office of Ronald I. Levine
Eileen L. Linarducci, Esq.
210 River Street, Suite 11
Hackensack, New Jersey  07601
*Counsel for the Debtor*

Brion W. Kelley, Esq.
316 Park Office Building
400 Third Avenue
Kingston, Pennsylvania  18704
*Counsel for AJT Properties, LLC*

McCarter & English, LLP
Charles A. Stanziale, Jr., Esq.
Four Gateway Center
100 Mulberry Street
Newark, New Jersey  07102
*Counsel for Chapter 7 Trustee*

**THE HONORABLE DONALD H. STECKROTH, BANKRUPTCY JUDGE**

The Court held an evidentiary hearing on March 29, 2012 on the application of Nila Castro ("Debtor") for turnover of rental income, attorney's fees, and sanctions from AJT Properties, LLC ("AJT"). Two witnesses testified: the Debtor, in support of her application, and Mr. Alexander Tarapchak, the sole member of AJT. Marked into evidence were exhibits D-1 and D-2 by the Debtor and C-1 through C-14 by AJT. At the conclusion of testimony, the parties were directed to file a statement in lieu of closing. These have been reviewed by the Court and the findings of fact and decision of the Court is as follows.

The Debtor was the owner of 154 Main Street, Old Forge, Pennsylvania ("Property"), a three-floor, six-unit, rental property. She filed for chapter 7 bankruptcy on January 31, 2011, immediately prior to a scheduled foreclosure sale of the Property. At the time, the monthly rental income from the six tenants was $3,100 per month. The Property was sold at sheriff's sale on February 1, 2011 to AJT. Neither the Debtor nor her counsel notified the foreclosing bank or the Sheriff of Lackawanna County of the bankruptcy filing before the sale was held. The earliest notice to anyone connected with the sheriff's sale was copy of a letter addressed to counsel for the foreclosure mortgagee entered on the foreclosure docket on February 10, 2011, nine days after the sale. No notice or telephone call was made directly to the sheriff advising of the filing.

On February 8, 2011, AJT notified the Debtor's rental agent it had purchased the Property and instructed it to turn over all rent. It was not until March 1, after performing a title search of the Property, that AJT became aware there had been a bankruptcy filing and in mid March, Debtor's counsel first notified AJT of the bankruptcy. At that time, AJT was immersed in collecting rents, making repairs, and dealing with the tenants' complaints. In and around the same time, the

3

mortgagee filed an application for relief from the automatic stay in this Court, which was unopposed by the Debtor, and the Court entered an Order granting relief from the stay on March 24, 2011. (See Docket entry no. 16). Upon becoming aware of the bankruptcy, and the fact that the Debtor had not opposed the lift stay motion, AJT continued to collect rents and pay expenses related to the Property.

Because the Property was sold after the bankruptcy filing, the Sheriff of Lackawanna County relisted the Property for sale and it was again sold on July 19, 2011 to R&A Properties, an entity owned by Mr. Tarapchak and his wife, for a little under $74,000.

Litigation between the parties commenced in this Court by the Debtor's motion to reopen the case and for turnover of rents, etc., which resulted in an unopposed Order of August 8, 2011, drafted by Debtor's counsel, providing for relief against AJT for an accounting of all rents collected and the return of those rents to the Debtor, together with request for Debtor's Certification of Services so the Court could award attorney's fees based upon AJT's violation of the Bankruptcy Code and lack of cooperation. (See Docket no. 28). The accounting was to be provided within ten days of the Order.

AJT provided a one-page accounting on September 9, 2011 and sent a check for $1,950. This was less than the $17,000 anticipated by the Debtor for rents from February through July 18, 2011. The Debtor alleges AJT ignored her counsel's request for the accounting and that what was finally produced was inadequate because the accounting did not also provide supporting documentation. As a result, the Debtor states it was necessary to file the within motion to enforce the Court's Order of August 8, 2011.

The Court heard the testimony of the two witnesses. Each is found credible but obviously partial in asserting their view of the facts. The testimony varied on several key elements. The Debtor testified she is entitled to rental income of $17,000 for five and a half months (February,

4

March, April, May, June, and one half of July) at $3,100 per month, principally because that was the rent roll for that time period. She offered no proof in support of this amount having been paid or collected. She had no direct knowledge of what rents were paid or collected and, at best, offered hearsay testimony that several tenants indicated to her they paid. The Debtor produced no documentary evidence of rents paid such as copies of cashed rental checks and offered no witnesses in support of her allegations that $17,000 was paid. The Debtor did state she visited the Property on April 11, 2012, several months after the filing, and some of the tenants she spoke with told her they paid. Nevertheless, the Debtor advanced no support for her claim of rents paid other than hearsay testimony and basically takes the position that the entire rent roll of $3,100 per month should be credited to her for the period in question.

The testimony of Alexander Tarapchak of AJT was to the contrary. He testified that AJT collected a total of $6,075 through April of 2011 either through its own efforts or the efforts of the rental agent AJT hired. The testimony stated that all tenants ceased making rental payments after April 2011. He testified that prior to that time, only four out of six tenants made payments for February and March and only three tenants paid April rent. AJT was told by the tenants that the sheriff had told them in April not to pay anyone additional rent since the second foreclosure sale had been scheduled by the lender. In support of this, a series of supporting documents were marked into evidence indicating that service of the foreclosure package and rescheduling of the sale was made on tenants in and around April 21, 2011. The testimony as to $6,075 being collected was supported by documentary evidence in the form of AJT's bank account and copies of checks and money orders received by the rental agent.

Upon consideration of the evidence before the Court, the Court finds that the rents collected were as testified by Mr. Tarapchak, that is, $6,075 ($2,500 – February, $2,075 – March, $1,500 – April) and nothing more.

Expenses paid from the rent collected are also in dispute. The Debtor offered no real testimony on this issue. It is clear the Debtor took no discovery, not even a deposition, relative to investigating and proving her allegations and suspicions. Her chief argument is that AJT is not entitled to credit for the Old Forge sewer charges of $1,390 or the Lackawanna sewer authority charge of $567 because neither of those bills was paid by AJT. The Debtor argues these sums are outstanding and that the purchaser in the July foreclosure sale took the Property with full knowledge of the outstanding sewer charges and subject to those charges. The Court agrees with the Debtor's assertion on the sewer charge claim. If the charges had been paid, they would have been an appropriate credit but AJT chose not to pay these and the buyer took title subject to these charges. Therefore, $1,390 and $924.18 because the Debtor voluntarily paid $567 to Lackawanna Sewer on May 24, 2011 (See Exhibit D-2) should be deducted from the expenses itemized by AJT. As to the other expenses, these appear to be proper expenditures to maintain the Property and were paid by AJT from the collected rent. They will be allowed by the Court. Thus, subtracting the sewer charges of $2,314.18 from total expenses claimed by AJT of $4,766.71 results in $2,452.53 as allowable expenses.

|  | Rents Collected | $6,075.00 |
|---|---|---|
| Less: | Allowed Expenses | $2,452.53 |
|  |  | $3,622.47. |

Since AJT has already remitted $1,950.54 to the Debtor, it still owes the Debtor $1,671.93.

6

Debtor's counsel has requested counsel fees and costs with respect to this action to enforce the Court's August 8, 2011 Order. The language of the Order drafted by Debtor's counsel is clear. It required Debtor's counsel be provided "an accounting for all rents collected, along with return of those rents received from Debtor's Property . . . ." The Order does not provide a requirement that the accounting be supported by copies of documents or other support. The Order further allows an award of attorney's fees for (1) violation of the Bankruptcy Code and (2) lack of cooperation.

Debtor's closing remarks focused extensively on its claim for attorney's fees under section 362(k) and seeks fees for the willful violation of the automatic stay. Unfortunately for Debtor, there is no evidence of a willful violation of the stay. The facts adduced at the hearing go beyond what was known by the Court at the time the August 8, 2011 Order was entered. These show that neither the Debtor nor her counsel gave immediate notice of the filing to prevent the sheriff's sale on February 1, 2011. While the sale may still be voided because of the filing of the chapter 7, damages, including attorney's fees, for violation of the stay, require a finding of willfulness and this Court cannot make such a finding on the record before it. See 11 U.S.C. § 362(k). In fact, AJT did not learn of the filing until mid to late March when it was discovered in the title report it ordered, months after the January 31, 2011 filing.

Also at issue is what real benefit is afforded to the Debtor or the estate. The rents, minus maintenance expenses, to be turned over to the estate, are minor. Nevertheless, the Court finds that attorney's fees should be awarded to the Debtor for the initial pleadings and work necessary to obtain the accounting, which the Court is convinced required the filing of the motion by Debtor. Unfortunately, little else was proved at the evidentiary hearing and no evidence was adduced suggesting or proving a willful violation of the automatic stay. In fact, while perhaps a bit late, the

accounting was provided and the Order of August 8, 2011 is silent as to a requirement for supporting documentation as the Debtor suggests. What the Debtor could have done was taken preliminary discovery and inquired into the facts and had this occurred, the evidentiary hearing might not have been necessary. Certainly, AJT should not bear the expense of work performed by Debtor's counsel when simple discovery could have resolved the matter expeditiously.

Debtor seeks attorney's fees of $8,682.50. The Court finds $3,000 to be a reasonable amount for the services resulting in preparing the motion, obtaining the August 8 Order, and relevant correspondence thereafter. That sum is reasonable for the services rendered and the results achieved.

Finally, Debtor seeks sanctions against AJT for violations of the August 8 Order. Debtor seeks $10,450 ($50 per day from August 8, 2011 through March 29, 2012). AJT opposes the assessment of sanctions based on the evidence at trial, indications it cooperated with Debtor's counsel and supplied documentation despite the fact it was not required by the August 8 Order and the support of the plain reading of the correspondence back and forth between counsel for the Debtor and AJT. While some time did lag, excuse can be understood because AJT's counsel was out of his office due to flooding conditions because of Hurricane Irene. On balance, the Court does not find sanctions appropriate in this matter.

In summary, the Court finds the Debtor is entitled to receive $1,671.93 as the balance owed to it from the rents collected by AJT and Debtor is entitled to receive attorney's fees in the sum of $3,000. Thus, the sum of $4,671.93 is awarded to Debtor. The balance of the requested relief is denied.

An Order in conformance with this Opinion will be signed by the Court today and entered on the docket.

*s/ Donald H. Steckroth*

_____
DONALD H. STECKROTH
UNITED STATES BANKRUPTCY JUDGE

Dated: April 27, 2012